Morning, Your Honors. Jess Kaplan on behalf of the appellant, Joyce Sherman. I'd like to reserve five minutes for rebuttal. First of all, dealing with the two-year unadjudicated period in the issue of the state agency decision in 1994, to jump right into this, acquiescence ruling 97-49 says, quote, on which there has been a final decision by an administrative law judge, ALJ, or the appeals council that the claimant is not disabled. So that state agency decision simply doesn't invoke the Chavez acquiescence ruling 97-49 issue, which the administrative law judge didn't utilize anyway. So I hope that puts that to bed. Second — Now, what's your point? There's no presumption of non-disability? I mean, what's your point? What's the context? Right. For the 92-94 time period, there's no getting around the administrative law judge's indulgent statement that, you know, I'm not going to hold that state agency decision against her. Obviously, he didn't say it in those words. He couldn't. So that's a non-issue. Next, second, I wanted to simply cite the Court to a pretty well-known case that stands for the same thing as SEC v. Chenery, but I think I forgot to actually utilize it in my brief. Pinto v. Massonari, 249 F. 3rd, 840, 9th Circuit, 2000. This is, you know, a 9th Circuit case dealing with Social Security, which stands for the same principle that this Court or any other Court cannot rewrite and rehabilitate the administrative law judge's decision that takes the administrative agency decision as it finds it, so to speak, and has to uphold or reverse it on the basis of the rationale used in that decision. Perhaps third, anyway, the argument or the assertion that Ms. Sherman's attainment of a different age category, the so-called advanced age category, by the end of the time period that's at issue here, which is clearly a changed circumstance under Chavez and thus would, you know, change the earlier two years of 90 to 92 as well. I mean, that was the specific changed circumstance at issue in the Chavez case. The assertion that because this was a step forward denial, in other words, saying that she could still perform her past relevant work, that this consideration does not apply, that decision, that holding, rests on the vocational expert testimony issue, the reliance, it expressly relies on the vocational expert's testimony 10 years earlier at the early hearing. Counsel, excuse me for interrupting, but could you just tell us in your own words what was her past work? She was a retail. What did she have to do? It was light work. It was retail jewelry. I don't think it was really retail jewelry sales. I think it was a little bit higher level than that, but it was definitely light work and in the jewelry business. She worked with diamonds and gems, is that right? At this point, I guess I don't know exactly. As I say, I think that it was not – she wasn't simply standing behind a counter all day. No, she had to carry some trays of jewelry and rings and stuff. She, I think, can be presumed to have lifted within the light rather than the sedentary range as well. Okay, now what is the nature – okay, then the next question is what is the nature of her disability that the evidence compels a finding that she couldn't perform that anymore? Well, if I can sidestep that, at least momentarily. Not a good idea to sidestep a question from a chief judge. Okay. I mean, isn't that what this case is all about? Whether she – well, the thing is, where I wanted to step sideways is that the – Okay, go ahead. Step right off the cliff. The holdings on residual functional capacity consistently, because they're identical in the first and the last decision, involve problems with repetitive neck movements and – let's see. There's some other problem which simply weren't put to the vocational expert. He was simply asked about a straight light capacity. And this is aside, of course, from the whole issue of psychiatric impairment. No, no overhead reaching, which I think – I mean, I guess I can't tell you for a fact, but that's what the vocational expert is supposed to tell you, whether that job involves overhead reaching. It's not an unreasonable proposition, and I don't know that repetitive movement of the neck is irrelevant to the past relevant work either. The point being that the question to the vocational expert was simply phrased in terms of can she do light work? Or if she could do light work, can she do her past relevant work? So are you saying that there is no evidence that she couldn't do her past work? Obviously, I disagree with that as you phrased it. I contend she can't do her past relevant work. But is there evidence that says that she can't? Or is there simply a failure to ask a witness the requisite degree of detail as to her condition? You could say that's a problem with relying on 10-year-old vocational testimony that she had no opportunity – with no attorney, simply a non-attorney representative in the hearing that she had no attorney to pursue this. I mean, the overhead reaching issue as well as the neck movement issue, these are vocational questions. I guess I didn't come here with something out of the Dictionary of Occupational Titles saying that's the case. I don't obviously believe that those are the only three relevant factors, light work, repetitive neck movement, and overhead. I'm just asking you about this record. What is in this record that says that she can't do the work? There's whichever doctor it is who's said that she's reduced to a sit-stand option job, which is below a sedentary level. And, you know, all these inconvenient aspects of residual functional capacity in the record are simply being ignored by this decision. Who's Dr. Bermudez? Dr. Bermudez is a doctor who examined the claimant in 1999 or 2000 or so, so I'm not speaking to her and I couldn't tell you exactly what she said. She probably described her as more disabled than the decision did, especially by that point in time. I'm familiar as it happens with Dr. Bermudez. All right, you have a minute and a half left. Would you care to retain that to respond? Okay. We'll hear from the other side. Good morning, Your Honors. I'm Jerome Ingallseth for the Commissioner of Social Security. The ALJ in the present claim reasonably evaluated the evidence and found that the claimant had not changed or produced any changed circumstances since the February 1992 decision. The ALJ was looking at the period here from February 1992 to December 31, 1994, when the claimant's disability insurance expired. And based on his reasonable evaluation of the evidence, he found that she had not come forward with any evidence showing a change in her condition. She essentially remained pretty stable, and the finding of light work was reasonable for even the unadjudicated period. What's the evidence that supports the idea that she could still do past work? Well, several doctors found that she could perform a range of light work. For example, Dr. Henry, the consultative examiner in June of 1994, found that she could perform a range of light work. Also the state agency physicians, Dr. O'Neill and Dr. Hansen. Dr. Neustorf, who was the agreed medical examiner who saw her in January 1993, did find that she fell between light and sedentary work with a sit-stand option. The claimant makes two arguments. One, that her change of age was a material change circumstance that the ALJ should have considered. But that's wrong on two counts. One, the prior ALJ found that the claimant could perform her past relevant work as a jewelry store manager, or I think a supervisor, which was actually a job that she was not performing at the time of her injury. She was performing the job of diamond consultant. But in any case, age is not relevant to that inquiry. And second, she didn't change into a new age category. She was 54 at the time her insurance expired, December 1994. So she was still what Social Security deems under the regulations, closely approaching advanced age. Second, the claimant argues that the vocational expert wasn't asked a proper question. But, of course, the time to have challenged the 1992 decision was in 1992. That's a final binding decision. Furthermore, as argued in the government's brief, the ALJ didn't even need vocational expert testimony necessarily to find that the claimant could perform her past relevant work. And on that point, I direct the Court's attention to page 112 of the transcript, where her jewelry store manager work is described as she herself describes it. Heaviest weight lifted, 20 pounds. Frequently lifted, less than 10 pounds. And a combination of walking, standing, and sitting. Sitting five hours, standing three hours, walking one hour. Although the ALJ in 1992 found that she could perform her past relevant work as it's generally performed in the national economy, this is certainly additional substantial evidence that she could have performed that job as she herself described it. Unless there are any questions from the panel? No, I don't think so. Do you have anything else to add? Thank you. Something that happens repeatedly in this decision is that workers' compensation medical reports are misread and misread to the disadvantage of Ms. Sherman responding a little further to the question of doctors supporting Ms. Sherman. For instance, if you look at Dr. Gross at page 1008 of the transcript, he calls the residual functional capacity that he describes light, and this is cited by the decision as support for its light finding. But this is what he's describing is clearly a sit-stand option. I don't want to step away from the mic and read it, although I left my transcript open to it. The same thing happens with respect to only even worse, really, within the psychiatric arena that we haven't talked about with respect to Dr. Whitson, where the other side in this argument calls it a reasonable sort of thing for the administrative law judge to do to ignore the fact that Dr. Whitson expressly divides up the psychiatric diagnosis into depression and anxiety, says that only depression is work-related, and says expressly, I'm only giving a functional capacity or a disability rating with respect to the depression. Then he calls it slight, and then he says this is a 25 percent impairment. And I believe that there's other things like this that are simply being read, clearly misread. You don't need to have expertise in workers' comp law to see what's going wrong here. Thank you, counsel. The case just argued will be disordered and submitted.
judges: Schroeder, Trott, W. Fletcher